■ DENISE BLYTHE, an Infant, by Her Father and Natural Guardian, ORVILLE BLYTHE, et al., Appellants, v CITY OF NEW YORK et al., Respondents.—In an action to recover damages for medical malpractice, the plaintiffs appeal from an order of the Supreme Court, Kings County (Adler, J.), dated January 28, 1985, which granted the defendants' motion for summary judgment dismissing the complaint and denied the plaintiffs' cross motion for an order dismissing the defendants' fifth and sixth affirmative defenses.

Order affirmed, with costs.

The infant plaintiff developed a seizure disorder, later diagnosed as meningitis, shortly after receiving penicillin and DPT injections at a Department of Health Clinic in Brooklyn on February 19, 1971. The infant was initially brought to the emergency room clinic of Kings County Hospital with complaints of fever and coughing. As her condition worsened, she

was admitted to that hospital on February 24, 1971. After the infant's discharge on March 25, 1971, she continued to be treated at Kings County Hospital as well as at the hospital clinic. The infant plaintiff had three subsequent admissions into Kings County Hospital and continued to be treated at the clinic for various conditions associated with her seizure disorder, including postmeningitis and cerebral palsy, through July 14, 1975. According to hospital records, the patient was never seen at Kings County Hospital or any of its clinics subsequent to July 14, 1975.

In March 1976, the infant plaintiff was admitted to Blythedale Children's Hospital (hereinafter Bylthedale), to which the plaintiffs had been referred by Columbia Presbyterian Hospital. She was discharged therefrom on July 30, 1976 with the recommendation that she continue treatment on an outpatient basis.

In February 1977 the United Cerebral Palsy School, which the infant had begun attending in the fall of 1976, referred the plaintiffs to the Queens Hospital Center for evaluation and physical therapy. The patient's medical information had previously been referred to the Department of Physical Medicine and Rehabilitation of Long Island Jewish Hospital. However, there had been no medical followup since her discharge from Blythedale. The letter of referral from the United Cerebral Palsy School to Queens Hospital unequivocally stated that the referral was at the family's request due to the convenience of close cooperation between the school and the hospital. The patient was thereafter seen at Queens Hospital, Children's Rehabilitation Service, for physical therapy and evaluation.

The plaintiffs served a notice of claim against the defendants on March 27, 1981 charging them with medical malpractice in the care and treatment of the infant plaintiff which led to severe damage to her central nervous system. The underlying theory of the complaint is that the infant received a continuous course of medical care and treatment from the defendant New York City Health and Hospitals Corporation (hereinafter HHC) which continued at the time of service of the complaint.

The defendants' motion to dismiss the action for failure to timely serve a notice of claim was granted while the plaintiffs' cross motion to dismiss certain of the defendants' affirmative defenses was denied. The court found that the treatments received by the infant at Queens Hospital in 1977 were not

continuous to those received at Kings County Hospital inasmuch as plaintiffs had discontinued treatment at the latter institution in order to seek the services of Blythedale.

In opposition to a defendant's motion for summary judgment, it is the plaintiff's burden to establish the existence of triable issues of fact concerning continuous treatment (see, *Connell v Hayden,* 83 AD2d 30, 39). The plaintiffs have failed to sustain their burden here. The associate director of medical records at Kings County Hospital has averred that a thorough search of hospital records reveals that the infant plaintiff received no treatment at the hospital or any of its clinics subsequent to July 14, 1975. In opposition thereto, the infant's mother merely offered the following statement: "I am certain that there must be other records that show Denise under the care of Kings County Hospital after that time. I, of course, cannot remember the exact dates". This is clearly insufficient to refute the defendants' evidence. Nor is the plaintiffs' burden satisfied by Mrs. Blythe's undocumented assertion in the preadmission interview at Blythedale that the infant was still attending the neurology clinic of Kings County Hospital. Said assertion was in conflict with the information provided to Columbia Presbyterian Hospital in February 1976, i.e., that the infant was last seen at Kings County in October 1975. The material submitted in opposition to the defendants' motion is devoid of any factual content as evidenced by the plaintiffs' inability to recall the dates and place of treatment, the persons who administered the treatment and the purpose for which it was rendered.

In the instant case, the infant's parents, by their conduct, unequivocally evinced a desire to discontinue treatment at Kings County Hospital and to seek further treatment at institutions not affiliated with HHC. While a social worker at Kings County Hospital may have recommended Bylthedale Children's Hospital to the plaintiffs, there was no direct referral by Kings County Hospital which could have established that the sequence of medical treatments administered to the infant plaintiff at the respective institutions constituted a single continuous course of treatment (cf. *Cotto v City of New York,* 99 AD2d 748; see also, *Marabello v City of New York,* 99 AD2d 133, *appeal dismissed* 62 NY2d 942). On these facts, it is reasonable to assume that the plaintiffs considered their treatment at Kings County Hospital to have been completed at the time of their referral to Blythedale and that they had no intention of returning to the former institution as

evidenced by their consultations with private, non-HHC professionals.

The record reveals the existence of a 19-month hiatus between the last recorded treatment at Kings County Hospital in July 1975 and the commencement of treatment at Queens Medical Center following the February 1977 referral by the United Cerebral Palsy School. Where, as here, the gap in treatment exceeds the applicable limitations period, treatment cannot, as a matter of law, be deemed continuous *(Curcio v Ippolito,* 97 AD2d 497, *affd* 63 NY2d 967; *Barrella v Richmond Mem. Hosp.,* 88 AD2d 379, 384). Under the circumstances, the required continuity has not been established through "a timely return visit instigated by the patient to complain about and seek treatment for a matter related to the initial treatment" *(McDermott v Torre,* 56 NY2d 399, 406). On these facts, the service of the plaintiffs' notice of claim on March 27, 1981 was untimely and the defendants' motion for summary judgment was properly granted.

We have considered the plaintiffs' remaining contentions and find them to be without merit. Gibbons, J. P., Thompson, Brown and Weinstein, JJ., concur.